IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MISTY KANIA,

          Plaintiff,

v.                                              CIVIL ACTION NO.   2:23-cv-00357

CHSPSC, LLC, et al.,

          Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court are Plaintiff Misty Kania's ("Plaintiff") Motion for Summary Judgment, [ECF No. 38], and Defendants CHSPSC, LLC and Oak Hill Hospital Corporation d/b/a Plateau Medical Center's (collectively, "Defendants") Motion for Summary Judgment, [ECF No. 36]. Because the motions raise substantially similar arguments, I will dispose of them together. For the following reasons, Plaintiff's motion, [ECF No. 38], and Defendants' motion, [ECF No. 36], are both **DENIED**.

I.    Background

        *A. Factual and Procedural History*

This case arises from the termination of Plaintiff's employment with Plateau Medical Center ("Plateau") following a string of absences in the fall of 2022. [ECF No. 1, ¶¶ 10, 12–18]. At all times relevant to the present case, Oak Hill Hospital

Corporation did business as Plateau, *Id.* ¶ 5, and Oak Hill Hospital Corporation was owned by CHSPSC, LLC, ("CHSPSC") a Delaware corporation that is a subsidiary of Community Health Systems, Inc. ("CHS"). *Id.* ¶ 3. Plaintiff was employed with Plateau on three separate occasions over the course of twelve years. *Id.* ¶ 10. During Plaintiff's most recent term of employment with Plateau, which began in September of 2019, she worked in the hospital's surgical recovery room as a registered nurse ("RN"). *Id.* ¶ 11; [ECF No. 36-2]. She remained in this role until her termination on December 5, 2022. [ECF No. 36-14].

During a three week period in the fall of 2022, Plaintiff missed ten days of work due to pneumonia. [ECF No. 37, at 5–6]. Plaintiff called out of work four days in a row between November 15–18 due to shortness of breath and fatigue before returning to work on November 21. *Id.* at 5; [ECF No. 39, at 2]. After working her full shift on November 21, Plaintiff was still experiencing shortness of breath and fatigue and contacted her healthcare provider. [ECF No. 39, at 2]; [ECF No. 38-10, at 2]. Plaintiff then received a chest x-ray, which confirmed she had pneumonia. [ECF No. 38-8, at 14]. She then sent a text message to her supervisor at Plateau, Jeff Hanshaw, to inform him of her diagnosis and that she would be out of work. [ECF No. 38-10, at 2]. Mr. Hanshaw responded to Plaintiff's message by "liking" it. *Id.* Plaintiff was ordered by her healthcare provider to stay out of work for one week and was prescribed antibiotics and steroids. [ECF No. 39, at 3]. She returned to work on November 28 and worked through November 30, but called out December 1 and 2 due to the

"residual effects of pneumonia." *Id.; see also* [ECF No. 38-8, at 18 (doctor's note excusing Plaintiff from work from December 1 through December 5, 2022)]. When Plaintiff returned to work on December 5, she was notified that her employment was being terminated immediately due to her absences between November 15 and December 2. *Id.; see also* [ECF No. 38-7].

Plaintiff contacted Human Resources and the CHS Complaint Hotline to contest her termination. [ECF No. 38-8, at 20–21]. After receiving the final decision denying her appeal of her termination, Plaintiff filed the present lawsuit against CHS,[1] CHSPSC, and Plateau claiming that her termination violates the Family and Medical Leave Act ("FMLA") and is in contravention of West Virginia state public policy. [ECF No. 1, ¶¶ 28–36].

In Count I, Plaintiff alleges that Defendants violated the FMLA's prohibition on retaliation by terminating her employment because she exercised her rights under the statute. *Id.* ¶ 29. Specifically, Plaintiff asserts that she was terminated after returning to work following a two-week period of absences related to pneumonia. *Id.* ¶¶ 12–19. In Count II, Plaintiff claims that Defendants violated the FMLA's prohibition on interference by failing to meet its obligations under the FMLA. *Id.* ¶¶ 32–33. Finally, in Count III, Plaintiff alleges that her termination was in contravention of "a substantial state public policy of the State of West Virginia." *Id.* ¶¶ 35–36.

---

[1] CHS was dismissed without prejudice from this action on June 21, 2023. [ECF No. 11].

3

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). The moving party may meet its burden of showing that no genuine issue of material fact exists through the use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Rather, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation omitted). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational

inferences in the light most favorable to the party opposing that motion." *Id.* (internal quotation omitted).

### III. Discussion

Plaintiff asserts claims against Defendants for retaliation for exercising rights and interference with rights under the FMLA as well as a claim for wrongful discharge in contravention of substantial public policy of the state. [ECF No. 1, ¶¶ 28–36]. The FMLA was enacted in part "to entitle employees to take reasonable leave for medical reasons." *Yashenko v. Harrah's N.C. Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006) (quoting 29 U.S.C. § 2601(b)(1)–(2)). Under the FMLA, "employees have an unfettered right to take FMLA leave because of a serious health condition intermittently when 'medically necessary,' with or without employer consent." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 293 (4th Cir. 2009) (footnote omitted) (citing 29 U.S.C. § 2612(a)(1)(C)–(D)).

The FMLA provides employees with several substantive rights including the right to take up to twelve weeks of leave during any twelve-month period for health-related concerns. 29 U.S.C. § 2612(a)(1)(D). When an employee takes FMLA leave, it "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." *Yashenko*, 446 F.3d at 546 (quoting 29 U.S.C.§ 2614(a)(2)). Instead, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's substantive rights under the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA also prohibits employers from

engaging in retaliatory or discriminatory conduct against employees who exercise their substantive rights. *Yashenko*, 446 F.3d at 546.

### A. Count I — FMLA Retaliation

The Fourth Circuit held in *Yashenko* that FMLA retaliation claims are evaluated under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). 446 F.3d at 550–51. To establish a prima facie case of FMLA retaliation, a plaintiff must demonstrate that "(1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) the adverse employment action was causally connected to her protected activity." *See Ranade v. BT Ams.*, No. 1:12-cv-01039, 2013 WL 5818019, at *3 (E.D. Va. Oct. 28, 2013), *aff'd*, 581 Fed. Appx. 182 (4th Cir. 2014); *see also Hannah P. v. Coats*, 916 F.3d 327, 347 (4th Cir. 2019). At that point, the burden shifts to the defendants to demonstrate that there was "a legitimate, nonretaliatory reason for taking the employment action at issue." *Hannah P.*, 916 F.3d at 347 (citing *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 429 (4th Cir. 2015)). If the employer meets this burden, the burden shifts back to the plaintiff, who is then given the opportunity to show that the employer's reason was simply a pretext for retaliation. *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017). To survive a motion for summary judgment, "the plaintiff must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable fact finder could conclude that

the adverse employment action" was retaliatory. *Id.* (quoting *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016)).

Here, Plaintiff has established a prima facie case for FMLA retaliation. As explained further below, Plaintiff engaged in a protected activity when she attempted to exercise her rights under the FMLA by providing notice of her serious health condition to Defendants. It is undisputed that Plaintiff's employment with Plateau was terminated on December 5, 2022. Finally, Plaintiff has demonstrated that her termination was causally connected to her protected activity. The Fourth Circuit has held that "close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." *Waag*, 857 F.3d at 192. Here, Plaintiff returned to work from leave for her pneumonia on December 5, 2022, and was fired that same day. This same-day temporal proximity sufficiently demonstrates causation for the purposes of establishing a prima facie case. Therefore, Plaintiff has established a prima facie case for FMLA retaliation and under the *McDonnell Douglas* framework, the burden shifts to Defendants to demonstrate a legitimate nonretaliatory reason for the termination.

Defendants argue that Plaintiff's claim for FMLA retaliation must fail because they provide a legitimate, nonretaliatory reason for her termination: her continued and longstanding issues with attendance and tardiness as well as her substandard work performance. In support of this, Defendants provide testimony from Mr. Hanshaw that Plaintiff's performance and attendance at work had been a problem

7

for quite some time prior to her termination. *See* [ECF No. 36-11, at 23 (confirming that in March 2022 "there was a serious issue with [Plaintiff's] attendance)]. Notably, Defendants point to a March 2022 annual evaluation where Plaintiff received scores of 4 out of 5 for all evaluated criteria except for attendance for which she received a score of 1 out of 5. [ECF No. 36-15, at 9]. Defendants also submit that Plaintiff received a final warning on October 4, 2022, following an incident where she failed to report to an emergency surgery while she was on-call. [ECF No. 36-10, at 2]. At that time, Plaintiff was reprimanded and informed that "[a]ny other scenarios like this will result in termination." *Id.* Thus, Defendants have demonstrated a legitimate, nonretaliatory reason for terminating Plaintiff's employment. This shifts the burden back to Plaintiff to demonstrate that the reason given by Defendants is false and a pretext for retaliation. *Waag*, 857 F.3d at 192.

"Once the plaintiff proffers evidence establishing his prima facie case, and the employer offers a non-retaliation reason of the adverse reaction, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 306 (4th Cir. 2016) (quoting *Yashenko*, 446 F.3d at 551). Although Plaintiff argues in both her motion for summary judgment, [ECF No. 38], and her response brief to the Defendants' motion for summary judgment, [ECF No. 47], that her "FMLA qualifying leave was the only reason used by Plateau to terminate her employment," the record does not solely support that assertion. On her Termination Notice, Plateau explained

8

that she was fired because there were "[t]oo many call ins. To[o] many leaving before work is done. Last write up for not coming to two urgent surgical call ins. [N]o show was final warning." [ECF No. 36-14, at 2]. After listing its grievances with Plaintiff's employment performance, the termination notice then listed her absences from November and December 2022, when she had pneumonia. *Id.*

However, Plaintiff has provided, via the deposition testimonies of her supervisor at Plateau, Mr. Hanshaw, [ECF No. 38-13], and the HR Director for CHS, Stephanie Adkins, [ECF No. 38-14], evidence to support that termination came as a result of her pneumonia absences in November and December of 2022. [ECF No. 38-13, at 4 (confirming that "those call-ins [were] what prompted … the ultimate termination)]; [ECF No. 38-14, at 4 (stating that Plaintiff would have been terminated for the November and December 2022 absences even if she had not had a history of attendance and tardiness issues)]. This is sufficient evidence to create a genuine dispute of material fact to the degree that a reasonable jury could find that Plaintiff's termination was in retaliation for her exercise of FMLA rights or was based on her prior history of attendance and tardiness issues. *See Sharif*, 841 F.3d at 203. Therefore, because there is a genuine issue of material fact, both motions for summary judgment, [ECF Nos. 36, 38], are **DENIED** as to Count I: FMLA Retaliation.

### B. *Count II — FMLA Interference*

To establish an FMLA interference claim, a plaintiff must demonstrate that (1) she was entitled to FMLA benefits, (2) she provided sufficient notice to her

employer of a serious health condition and her intent to take leave, and (3) her employer denied her access to FMLA benefits to which she was entitled. *See Ranade*, 2013 WL 5818019, at *2; *see also Adams*, 789 F.3d at 427. Employees are only eligible for relief under the FMLA where they have been prejudiced by the employer's violation of the Act. *Vannoy*, 827 F.3d at 302; *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). In order to qualify for FMLA leave, an employee must notify their employer of their need to take leave. 29 C.F.R. § 825.301(b). The employee is not required to "expressly assert rights under the Act or even mention the FMLA" to satisfactorily provide notice. *Id.*; *see Dotson*, 558 F.3d at 295 ("In providing notice, the employee need not use any magic words."). Where the need for leave is unforeseeable, the employee must provide "sufficient information for an employer to reasonably determine" whether the leave is covered by FMLA as soon as practicable under the circumstances. 29 C.F.R. § 825.303.

I note that the parties do not dispute that Plaintiff was entitled to FMLA benefits. The issues for the court are instead whether (1) Plaintiff provided sufficient notice of her qualifying FMLA health condition to her employer as to qualify for FMLA leave and (2) Plaintiff was denied FMLA benefits by Defendants.

1. Adequate Notice

Defendants argue that Plaintiff's claim for FMLA interference must fail because she did not invoke the protections of FMLA or expressly request FMLA leave. [ECF No. 37, at 2, 12–14]. Alternatively, Defendants argue that Plaintiff can not

10

maintain an interference claim because she cannot demonstrate that "the decision to terminate her employment occurred *after* she first exercised her FMLA rights." *Id.* at 13 (emphasis in original). Plaintiff argues in both her response brief, [ECF No. 47, at 5], as well as in her own motion for summary judgment, [ECF No. 39, at 7–13], that she provided sufficient notice to her employer of her need for leave as to trigger the employer's obligations under the FMLA.

The FMLA regulations do not require that employees request that leave be designated as FMLA leave nor do they require that employees mention the Act by name. 29 C.F.R. § 825.301(b). Rather, the regulations require that, where the leave is unforeseeable as was Plaintiff's leave here, employees "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." § 825.303(b). The content that is deemed sufficient varies depending on the circumstances, but the regulations contemplate that "such information may include that a condition renders the employee unable to perform the functions of the job . . . and the anticipated duration of the absence, *if known*." *Id.* (emphasis added).

While the FMLA regulations do not provide an exhaustive list of illnesses and conditions that qualify as "serious health conditions," pneumonia is precisely the type of health condition that was contemplated by Congress. *See Miller v. AT&T Corp*, 250 F.3d 820, 834–35 (4th Cir. 2001) ("Examples of serious health conditions include but are not limited to . . . *pneumonia*. . . . All of these conditions meet the general test

11

that either the underlying health condition or the treatment of it requires the employee be absent from work . . . for more than a few days for treatment or recovery.") (quoting an excerpt from S. Rep. No. 103-3, at 28–29). A serious health condition, in pertinent part, as "an illness…that involves…continuing treatment by a health care provider." 29 C.F.R. § 825.113(a). A serious health condition requires, *inter alia*, continuing treatment with a period of incapacity of more than three consecutive days and treatment by a healthcare provider on at least one occasion—which must occur within seven days of the first day of incapacity—resulting in a regimen of continuing treatment supervised by the healthcare provider. *Id.* § 825.115.

Here, Plaintiff's notice of her serious medical condition was sufficient to trigger Plateau's obligations under the FMLA. The notice contained sufficient information for Defendants to reasonably determine whether FMLA would apply to the leave request because Plaintiff's notice contained information about her serious health condition, that she was under the care of a healthcare provider, and the anticipated duration of her leave.

The record is clear that Plaintiff's pneumonia was a qualifying serious health condition, and that Defendants were aware of such. Plaintiff was diagnosed with pneumonia on November 21, 2022, and prescribed antibiotics and steroids by her healthcare provider the next day. [ECF No. 38-1, at 1]. Her healthcare provider also "took her off work" for a week. *Id.* ¶ 7. Therefore, Plaintiff's pneumonia was a serious health condition because it resulted in a period of incapacity for longer than three

12

consecutive days and resulted in a regiment of continuing treatment—here, antibiotics and steroids—supervised by her healthcare provider.

Plateau was aware that Plaintiff was suffering from a serious medical condition. Plaintiff sent her supervisor, Jeffrey Hanshaw, a text message on Monday, November 21, 2022, at 6:20 PM to inform him that she had had a chest x-ray done that evening, which had revealed pneumonia. [ECF No. 38-10, at 2]. Mr. Hanshaw responded by "liking" the message. *Id.* Not only did he respond to Plaintiff's text message informing him of her diagnosis by "liking" the message, but he also testified during his deposition that he was advised via text message of the diagnosis. [ECF No. 47-1, at 5]. He further testified that he was aware she was being treated by a healthcare provider for her pneumonia, *id.*, and that that healthcare provider had provided written documentation that Plaintiff was unable to work, [ECF No. 38-13, at 8–9].

Although Plaintiff's initial text message, [ECF No. 38-10], did not communicate the anticipated duration of her leave that fact does not render her notice inadequate. The regulations clearly provide flexibility for employees who do not know the necessary duration of their leave initially. *See* 29 C.F.R. § 825.303(b) ("[S]uch information may include…the anticipated duration of the absence, *if known*.") (emphasis added). Furthermore, Plaintiff sent Mr. Hanshaw a follow-up text the next day where she did provide the anticipated duration of her leave. [ECF No. 38-5 ("[My healthcare provider] won't let me return [for the] remainder of [the] week.")].

13

Thus, I **FIND** that Plaintiff's notice was sufficient to trigger Defendants' obligations under the FMLA. Her notice communicated her serious medical condition, the fact that she was under the continuing care of a healthcare provider, and the anticipated duration of her leave. I now turn my attention to whether Plaintiff experienced a denial of benefits.

### 2. Denial of FMLA Benefits

Plaintiff argues that Defendants interfered with her rights under the FMLA by terminating her employment after she gave notice of her serious health condition and her intent to take leave. [ECF No. 39, at 1]. Defendants argue that Plaintiff's termination was justified based on her attendance and performance. Specifically, Defendants contend that Plaintiff was terminated because she "was a below average employee whose frequent unexcused absences, habitual tardiness, and substandard work justified her termination." [ECF No. 46, at 1].

"Interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Greene v. YRC, Inc.*, 987 F. Supp. 2d 644, 655 (D. Md. 2013) (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). An employee may be lawfully terminated and thus prevented "from exercising [her] statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.* (quoting *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)). Employers can

avoid liability under the FMLA by demonstrating that an employee would have not remained employed regardless of the employee's exercise of FMLA rights. *Yashenko*, 446 F.3d at 547.

Here, Defendants argue that Plaintiff was lawfully terminated based on her attendance issues, tardiness, and substandard work performance. [ECF No. 46, at 1]. They further claim that the decision to terminate Plaintiff's employment was "wholly removed from considerations of a potential FMLA leave claim." [ECF No. 37, at 16]. Defendants explain how all of the Plateau employees testified via deposition that Plaintiff's termination was based on her long track record of attendance and performance issues. *Id.* at 15. In her response brief, [ECF No. 47], as well as in her own motion for summary judgment, [ECF No. 39], Plaintiff contends that her termination was solely because of the fall 2022 absences related to her pneumonia. In support of this proposition, Plaintiff refers to those same deposition testimonies of those same Plateau employees that Defendants claim confirmed that her termination was justified. [ECF No. 47, at 3 ("To the contrary all of the [Plateau] employees who were involved in the decision to terminate [Plaintiff's] employment testified that [she] would not have been terminated had it not been for FMLA qualifying medical leave.")]. Because reasonable juries could differ on this factual question—the reason for her termination—a genuine issue of material fact exists. Therefore, both motions for summary judgment, [ECF Nos. 36, 38], are **DENIED** as to Count II: FMLA Interference.

15

### C. Count III — Discharge in Contravention of State Public Policy

In Count III, Plaintiff asserts that her termination was in retaliation for exercising her rights under the FMLA, which is in contravention of substantial public policy of the state of West Virginia. [ECF No. 1, ¶¶ 34–36]. "The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge." Syl. Pt. 1, *Harless v. First Nat'l Bank in Fairmont*, 246 S.E.2d 270, 271 (W. Va. 1978). The Supreme Court of Appeals of West Virginia has held that an employee may state a claim for retaliatory discharge where that employee was discriminated against in violation of the FMLA's leave provisions. *See Burke v. Wetzel Cnty. Comm'n*, 815 S.E.2d 520, 537 (W. Va. 2018).

Defendants argue that Count III is duplicative of the allegations raised in Counts I and II and should therefore be dismissed. [ECF No. 37, at 18–19]. Expressing no opinion as to the likelihood of Plaintiff's success on her state law claim, I find that she is permitted to maintain the claim in this action because "the FMLA does not preempt state law claims, even those claims arising out of the same transaction or occurrence as an FMLA claim." *Vandevander v. Verizon Wireless, LLC*, 149 F. Supp. 3d 724, 728 (S.D. W. Va. 2016) (footnote omitted) (allowing Plaintiff to bring both an FMLA claim and a retaliatory discharge claim in violation of West Virginia public policy). Having already found that there is a genuine issue of material

fact as to whether Plaintiff's termination was retaliatory in nature, I hereby **FIND** that the same genuine issue of material fact exists as to Plaintiff's *Harless* claim. Therefore, both motions for summary judgment, [ECF Nos. 36, 38], are also **DENIED** as to Count III.

### D. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment, [ECF No. 36], Plaintiff's Motion for Summary Judgment, [ECF No. 38], are both DENIED. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 25, 2024

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE